# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** *ex rel.* **MICHAEL S. LORD,** | : | |
| | : | |
| Plaintiffs/Relator | : | CIVIL ACTION NO. 3:13-2940 |
| | : | |
| v. | : | |
| | : | (JUDGE MANNION) |
| **NAPA MANAGEMENT SERVICES CORPORATION, AND NORTH AMERICAN PARTNERS IN ANESTHESIA (PENNSYLVANIA), LLC** | : | |
| | : | |
| Defendants | : | |
| | : | |

## **MEMORANDUM**

Pending before the Court is a motion for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15, filed by Michael S. Lord (the "Relator"). (Doc. 157).

On December 3, 2013, Relator, on behalf of the United States of America, filed a complaint against NAPA Management Services Corporation ("NMSC") and North American Partners in Anesthesia (Pennsylvania), LLC, ("NAPA-PA"), (collectively the "Defendants"), as well as the Pocono Medical Center ("PMC"), alleging various claims including violation of the False Claims Act (the "FCA"), wrongful discharge and harassment, violation of the

Pennsylvania Wage Payment and Collection Law and Pennsylvania Whistleblower Law, wrongful termination, and breach of contract. *See* (Doc. 1). After the United States filed a notice of election to decline intervention in this case, Relator filed a redacted complaint (the "complaint") against PMC and Defendants on December 7, 2016. (Doc. 26). On June 20, 2017, this Court dismissed Relator's claims against PMC with prejudice and dismissed Relator's claims against Defendants for violation of the Pennsylvania Wage Payment and Collection Law, violation of the Pennsylvania Whistleblower Law, and wrongful termination as duplicative of his federal whistleblower retaliation claims. (Doc. 74).

On April 18, 2017, this Court filed a scheduling order setting the deadlines for the amending of pleadings for June 29, 2018 and the completion of discovery for September 14, 2018. Thereafter, the parties commenced extensive discovery, which eventually culminated in twenty-three document productions upon which the Relator would allegedly rely in filing an amended complaint. As part of the Relator's efforts to engage new counsel, however, the Relator filed several motions to stay the proceeding's schedule as set forth in the April 18, 2017 order, including requests for a sixty-day stay on May 1, 2018, a thirty-day stay on July 5, 2018, a thirty-day stay on August 13, 2018, a thirty-day stay on September 13, 2018, and a thirty-day stay on October 15, 2018. This Court granted all such stay requests filed by the Relator and eventually signed an updated scheduling order on December 28, 2018 setting the new deadline for the amendment of

pleadings for March 14, 2020 (the "scheduling order deadline") and the completion of fact discovery for May 30, 2020. (Doc. 106).

On March 6, 2020, the Relator filed a letter, the purpose of which was to "apprise the Court of the status of discovery and the reasons why more time is needed." (Doc. 155). In this letter, the Relator stated that he "anticipate[d]" that certain "steps need to be taken" as part of discovery, including the resolution of "dispute[s] concerning the scope of discovery," the production of documents "from [PMC] that the [] Defendants did not retain," the completion of Defendants' document production, the amendment of the complaint, and the completion of depositions. The Defendants filed a letter on March 9, 2020 opposing the Relator's request. (Doc. 156). Nevertheless, the Relator did not file a motion to stay the proceedings and the Court did not order the extension of the deadline dates set forth in the December 28, 2018 scheduling order.

On September 12, 2020, over six months after the Court-ordered deadline for filing amended pleadings, the Relator filed a motion for leave to file an amended complaint and a draft amended complaint that expanded both the time frame and scope of the his initial claims. (Docs. 157, 157-2).[1] Defendants filed their brief in opposition to Relator's motion on October 14,

---

[1] The amended complaint would expand the initial complaint from 85 pages to roughly 155 pages, and, according to the Defendants, "seeks to significantly expand the scope of this litigation to encompass 11 additional years and at least 10 additional hospitals."

2020, (Doc. 163), and the Relator filed his reply brief on October 28, 2020, (Doc. 166). In support of his motion, the Relator initially argued that he had "received documents and information which demonstrate the NAPA Defendants submitted false claims to the Centers for Medicare and Medicaid Services ('CMS') and Pennsylvania Medicaid for anesthesiology services that Defendants knew did not meet the established criteria set by CMS, the Tax Equity and Fiscal Responsibility Act of 1982 ('TEFRA'), Pub. L. 97-248, and other applicable law." (Doc. 158 at 2-3). In contrast, after Defendants filed their response brief arguing that the Relator had failed to timely file his amended complaint or show "good cause" for such a delay, Relator instead attempted to turn the Court's focus to discovery disputes and documents the Defendants allegedly failed to timely deliver to Relator, which seemingly caused the Relator to file the amended complaint late. *See generally* (Doc. 166).

In light of the extreme tardiness of the filing of the Relator's amended complaint and the prejudice that Defendants would face in light of the amended pleadings, the Court will **DENY** Relator's motion for leave to file an amended complaint.

I. **BACKGROUND**[2]

---

[2] As the Court set forth the full procedural and factual background of this case when it decided PMC's motion to dismiss the Relator's complaint,

Relator Michael Lord is a certified registered nurse anesthetist ("CRNA") who was employed at the Pocono Medical Center in East Stroudsburg, Pennsylvania from June 10, 2011, to on or about June 21, 2013. Defendants, Relator's employers, collectively operate a specialty anesthesia and perioperative management company that works with anesthesia providers in physician offices, ambulatory surgery centers, and hospitals, including PMC, in several states.

Of note to this litigation, Defendants, as providers of anesthesiologic services under Medicare, are required to follow the standards set forth in the FCA. Specifically, the FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved." 31 U.S.C. §3729(a)(1). For anesthesiologists, there are traditionally three types of claims enumerated in Medicare billing submissions, generally reflecting the three types of care provided: "personally performed" care, "medically directed" care, and "medically supervised" care. 42 C.F.R. §414.46. Each of these forms of care maintain their own billing rates, and each has independent criteria under TEFRA that a claimant must meet to qualify for Medicare reimbursement.

---

(Doc. 50), in a memorandum dated June 20, 2017, (Doc. 73), it shall not fully repeat such background herein.

To qualify for Medicare reimbursement for "personally performed" care, the highest billable rate under Medicare for such services, an anesthesiologist or physician must have performed the anesthesia services "alone" or remained "continuously involved in a single case" working alongside a CRNA or anesthesiologist assistant. 42 C.F.R. §414.46(c).[3] For reimbursement through Medicare for "medically directed" care, a physician must show that for each patient, he or she "direct[ed] anesthesia services for one service or two through four concurrent anesthesia services" in accordance with the condition set forth in 42 C.F.R. §415.102(a) and:

(i) Performs a pre-anesthetic examination and evaluation;
(ii) Prescribes the anesthesia plan;
(iii) Personally participates in the most demanding aspects of the anesthesia plan including, if applicable, induction and emergence;
(iv) Ensures that any procedures in the anesthesia plan that he or she does not perform are performed by a qualified individual as defined in operating instructions;
(v) Monitors the course of anesthesia administration at frequent intervals;
(vi) Remains physically present and available for immediate diagnosis and treatment of emergencies; and
(vii) Provides indicated post-anesthesia care.

---

[3] This Section and the sections that follow set forth numerous other circumstances through which services may qualify for each form of care beyond what the Court will describe here, including instances where services were performed before January 1, 1998. The Court instead will focus on the requirements as they generally pertain to the Relator's claims at this stage of the litigation as the specific requirements to qualify for certain forms of reimbursement and whether the Defendants met those requirements are not yet the focus of the Court's analysis.

42 C.F.R. §414.46(d); 42 C.F.R. §415.110(a) (reflecting codification of the TEFRA "Seven Steps" rules). While administering these services, however, a physician must also provide "no more than four anesthesia services concurrently and [] not perform any other services while he or she is directing the single or concurrent services so that one or more of the conditions in paragraph (a)(1) of [§415.110] are not violated." 12 C.F.R. §415.110(a)(2). Lastly, "medically supervised" care is billable under Medicare where a physician is overseeing more than four concurrent anesthesia procedures at one time or does not meet all seven TEFRA requirements to qualify as medically directed care. 42 C.F.R. §414.46(f).

Throughout the extent of his employment, Relator alleges that he witnessed numerous instances of FCA violations where Defendants submitted false claims for medically directed anesthesia services under Medicare and TEFRA even though Defendants were supposedly aware that they were not entitled to the payments claimed for those services. Specifically, Relator alleges that while working at PMC, he witnessed Defendants' systematic practices of overbilling Medicare by claiming it delivered "medically directed" services when NAPA-PA's physicians only provided "medically supervised" services to Medicare patients. Relator argues that these billing practices by the Defendants, which reflected, amongst other issues, improper coverage by physicians providing services, pre-signing of attestations claiming that services not yet provided were completed, and failures to perform adequate pre-anesthetic or pre-operative

7

examinations and evaluations, violated the regulations of the Centers for Medicare and Medicaid Services ("CMS"), which administers the Medicare and Medicaid programs. 42 U.S.C. §§1302, 1395hh. Relator further claims that he told his supervisors and the chief compliance officers at NAPA-PA and PMC about the false billing submissions and that they failed to take any action to correct the fraudulent conduct, but instead retaliated against Relator for reporting the wrongdoing and constructively terminated his employment.

In his amended complaint, the Relator goes even further and claims that these overbilling issues were far more pervasive than initially pled, and have extended not only to the Defendants' other service locations throughout Pennsylvania, but have reflected an ongoing policy implemented from at least 2007 to 2019. The Relator, however, failed to properly file the amended complaint until six months after the deadline set forth in the Court's December 28, 2018 scheduling order had expired. It was in his brief replying to the Defendants' opposition to his motion to amend the complaint that the Relator first raises the argument that he faced discovery disputes and delays from the Defendants that made it impossible for the Relator to timely file his motion, and that such delays provided "good cause" for the Court to grant his request.

## II.     STANDARD

Whether a court will grant a party's request for leave to amend pleadings is typically governed by Federal Rule of Civil Procedure 15, which

states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). In instances, however, where the court has entered a scheduling order, a party seeking to amend pleadings after the deadline set by the court to do so may modify the scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Third Circuit has made clear that a party seeking to amend its complaint after a scheduling deadline has passed must first satisfy the "good cause" standard, and only once the party has demonstrated good cause may the court consider the request to amend under the more liberal standard of Rule 15(a). Premier Comp Solutions, LLC v. UPMC, 970 F.3d 316, 319 (3d Cir. 2020). The moving party thus bears the burden of establishing "good cause" for its tardiness. Graham v. Progressive Direct Ins. Co., 271 F.R.D. 112, 119 (W.D. Pa. 2010); *but see* Premier Comp Solutions, LLC, 970 F.3d at 319 (where the moving party relied solely on Rule 15(a) and did not address Rule 16(b)(4) except in its reply brief, the district court is entitled to find the party forfeited its argument).[4]

---

[4] Though this Court may be "entitled" to disregard Relator's claim that he had good cause for his delay in filing his motion to amend as the Relator failed to address this argument in his opening brief, *see* (Doc. 158), the Court will still consider his argument to assure the Relator that his motion has been adjudicated. *But see* Venuto v. Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, P.C., 11 F.3d 385, 388 (3d Cir. 1993) ("The district court properly exercised its discretion and refused to consider contentions first addressed in [a] sur reply memorandum.") (citation omitted)).

9

A court's analysis under the "good cause" standard of Rule 16 must focus "on the diligence of the party seeking the modification of the scheduling order." Price v. Trans Union, LLC, 737 F. Supp. 2d 276, 279 (E.D. Pa. 2010) (internal citations omitted); see Sang Geoul Lee v. Won Il Park, 720 F. App'x. 663, 669 (3d Cir. 2017) (affirming the district court's decision to deny leave to amend because the moving party's attorney was "not diligent in seeking amendment"). Accordingly, if the moving party "was not diligent, there is no 'good cause' for modifying the scheduling order." Bolus v. Carnicella, 2020 WL 6203056, at *3 (M.D. Pa. Oct. 22, 2020) (quoting Banks v. City of Philadelphia, 309 F.R.D. 287, 290 (E.D. Pa. 2015) (citation omitted)).

If a moving party sufficiently shows that there was good cause for the court to allow for modification of the scheduling order, the court must next turn to Rule 15 under the Federal Rules of Civil Procedure. Rule 15(a) provides, in pertinent part, that after a responsive pleading, a party may amend its pleading "only with the opposing party's written consent or the court's leave," whereas "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In the absence of substantial or undue prejudice to the non-moving party – which "is the touchstone for the denial of an amendment" – the court may only deny the motion if the moving party exhibited "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir. 1993) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)) (citation

omitted); *see also* USX Corp. v. Barnhart, 395 F.3d 161, 166 (3d Cir. 2004). "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Foman, 371 U.S. at 182.

### III. DISCUSSION

As the Relator failed to timely file his motion seeking leave to amend the complaint, the Court must first determine whether there was good cause under Rule 16 for why the Relator had failed to meet the deadline set forth in the December 28, 2018 scheduling order. Premier Comp Solutions, LLC, 970 F.3d at 319 ("A party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard."). Thereafter, if the Relator has met his burden, the Court must turn to the question as to whether it should use its discretion to allow the Relator to make such an amendment. Reynolds v. Slippery Rock Univ. of PA, 2021 WL 796029, at *1 (W.D. Pa. Mar. 2, 2021) ("Only after the moving party demonstrates good cause under Rule 16(b)(4) does the Court consider whether the motion to amend meets the Rule 15 standard.").

### A. Relator Fails to Show There Was "Good Cause" for His Delayed Motion Seeking Leave to File an Amended Complaint

In accordance with Rule 16 of the Federal Rules of Civil Procedure, the movant maintains the burden to show that there was "good cause" for why it failed to timely file its motion seeking leave to file an amended complaint. In instances, however, where a moving party "was not diligent, there is no 'good cause' for modifying the scheduling order." Miller v. O'Brien Constr., Inc., 2021 WL 510072, at *3 (M.D. Pa. Feb. 11, 2021) (quoting Banks, 309 F.R.D. at 290) (internal citation omitted)). "Where the party knows or is in possession of information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent." Reynolds, 2021 WL 796029, at *1 (citing Greygor v. Wexford Health Sources, Inc., 2016 WL 772740, at *2 (W.D. Pa. Feb. 27, 2016). Likewise, "[c]arelessness, or attorney error … is insufficient to constitute 'good cause' under Rule 16(b)." Chancellor v. Pottsgrove Sch. Dist., 501 F.Supp.2d 695, 701-02 (E.D. Pa. 2007). Such "carelessness" or "attorney error" extends to mismanagement of the discovery process. *See* Lehman Bros. Holdings v. Gateway Funding Diversified Mortg. Servs., L.P., 785 F.3d 96, 102 (3d Cir. 2015) (holding that a party had not shown good cause where counsel could have been more diligent in conducting discovery, because "parties cannot avoid the consequences of the acts or omissions of [their] freely selected agent[s]" (internal quotation marks omitted)). In this instance, the Relator has failed to

show that there was in fact good cause for his failure to timely file his motion to amend the complaint.

First, the Relator was insufficiently diligent in his efforts to the meet the Court's scheduling order deadline. Specifically, the Relator had filed five separate motions during the litigation process to stay the proceedings, yet failed to file a motion to stay the proceedings when the deadline for which he could file an amended complaint was quickly approaching. In fact, the Relator filed a letter with the Court highlighting certain discovery issues and providing reasons for why more time would be necessary roughly one week before the deadline, but he took no steps to actually seek an adjournment. Instead, if the Relator truly wanted to allow himself additional time to more fully wade into further discovery disputes and develop an amended complaint, then he had already proven that he was aware of how to do so – by filing a motion with the Court requesting an extension of the scheduling order deadline.

Second, and more pointedly, many of the assertions made by the Relator within the amended complaint and his opening brief were based on evidence that was received from the Defendants well in advance of the scheduling order deadline. Though there were alleged "belated" and "delayed" productions by the Defendants during the discovery process, the Relator does not allege that he spent the interim time period between the scheduling order deadline and the date his motion was filed waiting for documents from the Defendants upon which he relied to amend the complaint. In fact, though the Defendants' brief in opposition to the Relator's

motion describes how virtually all of the information referred to in the amended complaint was in the Relator's possession months, or even years, in advance of the scheduling order deadline, the Relator fails to provide any meaningful responses to the Defendants' characterizations. *See* (Doc. 163 at 12-25). It must thus be assumed that the Relator had obtained all the meaningful information that he would obtain from the Defendants before the deadline to file an amended complaint and thereafter unfortunately took the extra six months to supplement the claims in the complaint without word to the Court.

In short, the Relator fails to provide any clear cause for why he could not have reasonably met the deadline set forth by the Court to file his amendments, or in the alternative, simply moved for more time. Therefore, Relator's motion for leave to file an amended complaint will be denied.

### B. The Defendants, if Facing the Relator's Amended Complaint, Would Be Prejudiced by New Pleadings

The "touchstone" of a Rule 15 analysis is whether there would be substantial or undue prejudice to the non-moving party if the moving party was allowed to amend its pleadings. "The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (citing Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984)). This may include "'whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new

14

theories.'" Graham v. Progressive Direct Ins. Co., 271 F.R.D. 112, 122 (W.D. Pa. 2010) (quoting Cureton, 252 F.3d at 273). If there were no prejudice, however, a Court must typically allow the moving party to amend unless there was "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." Lorenz, 1 F.3d at 1413-14 (citing Foman, 371 U.S. at 182) (citation omitted).

Though the Relator's motion seeking leave to amend the complaint will be denied in light of the analysis above, the Court also finds that the Defendants would have otherwise faced prejudice from the amended pleadings that would certainly "result in additional discovery, cost, and preparation to defend against new facts or new theories." *See* Graham, 271 F.R.D. at 122. Defendants claim that allowing the Relator to amend the complaint, arguably "expanding his claims by at least 11 additional years and at least 10 additional hospitals," would force further burdens on the Defendants that would be "unjust, unfair, and severally prejudicial." The Court agrees, particularly as expanding the years and issues to be litigated would force the parties and the Court to find and rely on witnesses and documentation that would likely be unreliable, incomplete, or degraded to a degree that it would be impossible to firmly establish a clear set of facts from which to come to a resolution as to the claims in question. Even though it would appear that the alleged practices of the Defendants, if sustained, would likewise reflect "unjust, unfair, and severally prejudicial" activities that

15

take advantage of a government-subsidized system relied upon by those in need of medical assistance, placing so unwieldy a burden on the Defendants to defend against allegations of such breadth and specificity as set forth in the proposed amended complaint would be unduly prejudicial.

Relator, in contrast, argues "that the fundamental purpose of Rule 15 is to allow a plaintiff 'an opportunity to test his claim on the merits,' and although 'the grant or denial of an opportunity to amend is within the discretion of the District Court,' that discretion is abused if it is exercised without giving the plaintiff sufficient opportunity to make [his] case." (Doc. 166 at 19-20) (quoting <u>United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242, 249 (3d Cir. 2016)</u> (citing <u>Foman, 371 U.S. at 182</u>)). In this sense, however, the Relator fortunately in no way loses the "opportunity to make [his] case." Rather, the Relator maintains multiple claims, none of which would be substantially undermined by the delayed introduction of the added evidentiary support first proffered through the amended complaint. As a result, the Court finds that allowing the Relator to amend his complaint would be improper.

## IV. CONCLUSION

For the reasons discussed above, Relator's motion for leave to file an amended complaint will be **DENIED.** A separate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 1, 2021**
13-2940-05.wpd